UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER VAN GALDER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ROGER CLARK, an individual, MELISSA SCOTT CLARK, an individual, SOUR WINE FARMS, LLC, a Delaware limited liability company, and DOES 1-10 INCLUSIVE,<br><br>Defendants. | Case No.: 17-cv-1623-AJB-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(Doc. Nos. 18, 24) |

Presently before the Court are two motions: Defendants Melissa Scott Clark ("Melissa") and Sour Wine Farms, LLC's motion to dismiss filed on October 4, 2017, (Doc. No. 18), and Defendant Roger Clark's ("Roger") motion to dismiss filed on October 5, 2017, (Doc. No. 24). On October 18 and 19, 2017, Plaintiff Jennifer Van Galder ("Plaintiff") filed oppositions to both motions. (Doc. Nos. 29, 30.) Having reviewed the parties' arguments and controlling legal authority and pursuant to Civil Local Rule 7.1.d.1, the Court finds the matters suitable for decision on the papers and without oral argument. For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** both motions to dismiss. (Doc. Nos. 18, 24.)

1

## BACKGROUND

The following facts are taken from Plaintiff's first amended complaint ("FAC") and construed as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

On July 9, 2015, Roger alerted Plaintiff that he had made a deal with a bankruptcy trustee with respect to the filing of a Chapter 7 case to force the division of their marital assets if she did not give him $250,000.00. (Doc. No. 16 ¶ 1.) On July 16, 2015, Roger filed for bankruptcy. (*Id.* ¶ 2.) While not listed as a creditor in the bankruptcy case or even provided formal notice, Plaintiff claims to be a creditor of Roger. (*Id.*) Thereafter, on October 13, 2015, Plaintiff filed an adversary proceeding against Roger in his bankruptcy case. (*Id.* ¶ 4.)

In sum, Plaintiff asserts that Defendants conspired to defraud the bankruptcy court and the creditors of Roger, including Plaintiff. (*Id.* ¶ 14.) In alleging this deception, Plaintiff advances allegations against Roger alone, Melissa alone, and Roger and Melissa together.[1] (*See generally* Doc. No. 16.)

Specifically, Plaintiff argues that both Roger and Melissa: (1) concealed income to pass the "means test"; (2) falsified a post-nuptial agreement; (3) altered documents to hide Roger's interest in real property; and (4) hid funds in undisclosed bank and corporate accounts to conceal documentation about their income from the bankruptcy trustee. (*Id.* ¶¶ 15–17, 19–20.) As to Roger individually, Plaintiff contends that he: (1) gave false testimony on multiple occasions; (2) falsely claimed that he owed debts to family, friends, and Sour Wine; and (3) waived his right to discharge. (*Id.* ¶¶ 18, 21–22, 29.) In regards to Melissa, the complaint alleges that she filed false declarations under penalty of perjury with the bankruptcy court to facilitate the fraud and filed false proofs of claim so that she and Roger would be paid out of the proceeds from the sale of the estate assets. (*Id.* ¶¶ 23–24.)

---

[1] Roger is the ex-husband of Plaintiff and is currently re-married to Melissa. (Doc. No. 16 ¶¶ 40, 41.)

Plaintiff attests that not only was she damaged as a result of the Defendants' fraud by being forced to purchase the bankruptcy estate's interest in her home in La Jolla, which was a payment of $561,000, but also that Defendants were unjustly enriched through the fraud by their ability to retain all of their assets and collect $70,420.38 from Roger's estate. (*Id.* ¶¶ 25–28.)

Plaintiff filed her original complaint on August 11, 2017. (Doc. No. 1.) Shortly thereafter, Defendants Melissa and Sour Wine filed separate motions to dismiss on August 29, 2017. (Doc. Nos. 7, 8.) Defendant Roger then filed a motion to dismiss on September 6, 2017. (Doc. No. 10.)

After the Court set briefing schedules on the motions, Plaintiff filed her FAC on September 20, 2017. (Doc. No. 16.) Plaintiff's FAC alleges causes of action for: (1) Violation of The Racketeer Influenced and Corrupt Organizations Act ("RICO")—18 U.S.C. §§ 1962 (a), (d); (2) Fraud as to all Defendants; (3) Conspiracy to Commit Fraud; and (4) Fraudulent Conveyance as to Defendants Roger and Melissa. (*See generally* id.) Due to this filing, the Court found the three motions to dismiss filed by Defendants in August and September of 2017 moot. (Doc. Nos. 19–21.) Subsequently, Defendants filed the instant motions, their motions to dismiss. (Doc. Nos. 18, 24.)

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the non-moving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972,

3

17-cv-1623-AJB-JLB

975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

# **DISCUSSION**

Presently, both motions to dismiss argue that Plaintiff's FAC should be dismissed in its entirety.[2] (*See generally* Doc. Nos. 18, 24.) Plaintiff challenges each of Defendants' contentions. (Doc. Nos. 29, 30.) The Court will first turn to Defendants Melissa and Sour Wine's request for judicial notice. (Doc. No. 18-1.)

**A. Judicial Notice of the Requested Documents is Justified**

Pursuant to Federal Rule of Evidence 201, Defendants Melissa and Sour Wine request judicial notice of the Chapter 7 Trustee's final account and distribution report, certifications that the estate has been fully administered, and application to be discharged. (Doc. No. 18-1 at 2.)

Rule 201 states that the court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The Court first notes that Defendants Melissa and Sour Wine fail to provide any applicable case law or reasons to support their request. (*See generally* Doc. No. 18-1.)

---

[2] The two motions to dismiss filed by Defendants are nearly identical. (*See generally* Doc. Nos. 18, 24.) Thus, for the remainder of this Order, in the interests of judicial efficiency, the Court will only refer to Roger's motion to dismiss—Doc. No. 24.

4

However, despite this deficiency, case law makes clear that judicial notice of public records such as bankruptcy court documents is warranted. *See In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996) ("[A]mple authority exists which recognizes that matters of public record, including court records in related or underlying cases which have a direct relation to the matters at issue, may be looked to when ruling on a 12(b)(6) motion to dismiss."), *reversed on other grounds by Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998); *see also Pritikin v. Comerica Bank*, No. C 09-03303 JF (RS), 2009 WL 3857455, at *3 (N.D. Cal. Nov. 17, 2009) (taking judicial notice of bankruptcy filings). Accordingly, the Court **GRANTS** Melissa and Sour Wine's request for judicial notice.

### B. Plaintiff's RICO Cause of Action is not Adequately Pled

Defendants argue that as Roger has given up his right to receive a discharge in his bankruptcy case, there is no threat of a future "ongoing" racketeering activity. (Doc. No. 24 at 6.) Thus, Plaintiff's RICO claim should be dismissed. (*Id.*) In her long-winded opposition, Plaintiff contends that Roger is not barred from filing a new bankruptcy case and that Defendants continue to derive income from a property that allegedly should have been part of the bankruptcy estate. (Doc. No. 30 at 7–8.)[3] Accordingly, the fraud continues the pattern of racketeering activity and thus Plaintiff's RICO cause of action is adequately pled. (*Id.* at 9–10.)

The RICO Act, passed in 1970 as Title IX of the Organized Crime Control Act, provides for both criminal and civil liability. 18 U.S.C. §§ 1961–1968. The civil RICO statutes allow individuals to file suit and recover treble damages against individuals who, through a "pattern of racketeering activity," acquire an interest in, or conduct the business of, an enterprise engaged in interstate or foreign commerce. 18 U.S.C. §§ 1962(b), (c), (d). To state a RICO claim under § 1962, a plaintiff must allege "(1) conduct (2) of an enterprise

---

[3] The Court notes that Plaintiff's two oppositions are simply duplicate briefs. (*See generally* Doc. Nos. 29, 30.)

(3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

A pattern of racketeering activity requires "at least two acts of racketeering activity," with the last act of racketeering activity occurring within ten years of the commission of a prior act of racketeering activity. 18 U.S.C. § 1961(5). Further, the Supreme Court has held that to show a pattern of racketeering activity, the racketeering predicates must be related and they must amount to or pose a threat of continued criminal activity. *H.J. Inc., v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The Supreme Court also noted that continuity is both "a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. For closed-ended continuity, predicate acts should extend more than a few weeks or months. *See id.* at 242. For open-ended continuity, "the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business . . . where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Id.* at 242–43.

As a threshold matter, the Court first takes issue with an argument produced by Plaintiff in her opposition briefs. Specifically, Plaintiff repeatedly asserts, in various forms, that Roger derives income from the Bahama Cove Property by renting it out through AirBnb. (Doc. No. 30 at 7.) Unfortunately, this allegation is not found anywhere within the four corners of Plaintiff's FAC. Thus, the Court declines to take into consideration this argument in coming to its conclusion in the present matter. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (emphasizing that in deciding a Rule 12(b)(6) motion, the court generally only looks to the face of the complaint and documents attached thereto); *see also Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1118 (C.D. Cal. 2015) (holding that a "court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it considers evidence outside the pleadings.").

Next, turning to the merits of Defendants' motions, the Court finds that the fatal flaw to Plaintiff's RICO claim is that it does not adequately allege that the racketeering predicates "pose an [implicit or explicit] threat of continued criminal activity." *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1053 (C.D. Cal. 2016) (citation omitted). As currently pled, the crux of Plaintiff's complaint is that Defendants sought to and have successfully defrauded the bankruptcy court. (*See* Doc. No. 16 ¶ 14 ("In the [bankruptcy] Case, Defendants conspired to defraud the bankruptcy court and the creditors of the Debtor, including Plaintiff."); *see also Id*. ¶ 96 ("Defendants have colluded together as part of an enterprise whose purpose was to perpetuate a massive fraud upon the Bankruptcy court, in order to unjustly enrich the Defendants . . . .").) However, Plaintiff also alleges that Roger waived his right to discharge and that the bankruptcy case is now closed. (*Id*. ¶¶ 29, 30.) Thus, looking to the specific assertions in the instant matter, the predicates do not establish the threat of a continued racketeering activity as the intended purported scheme and fraud have now been completed. *See H.J. Inc.*, 492 U.S. at 242 ("Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case.").

Plaintiff argues that the Racketeering activity continues as there is no bar preventing Defendants from filing a new case and that Defendants are now in the process of selling the bankruptcy assets for their own benefit. (Doc. No. 16 ¶¶ 30, 64; Doc. No. 30 at 7.) However, per this line of reasoning, any simple fraud or stand-alone activity could be alleged to be a "pattern of racketeering activity" under RICO. Moreover, these arguments are at odds with Plaintiff's own pleading. The Court reiterates that Plaintiff's FAC clearly states that the "conspiracy's purpose was to divert money from [Roger's] Chapter 7 bankruptcy estate for [Defendants'] own benefit and to facilitate the filing of invalid claims to defraud Bankruptcy Creditors[.]" (*Id*. ¶ 94.) As the bankruptcy case is now closed, the sale of estate assets does not perpetuate the purported scheme, and thus the requisite threat of continuity in this case is not supplied. *See H.J. Inc.*, 492 U.S. at 242.

Moreover, viewed as either a closed or open-ended concept, the FAC similarly fails

to sufficiently assert a RICO cause of action. Viewed as a closed-ended continuity, the FAC alleges that the predicate acts began on July 9, 2015. (Doc. No. 16 ¶ 1.) However, Plaintiff fails to provide the dates of when the next predicate act occurred or when the bankruptcy case concluded. Plaintiff's FAC only states in a conclusory manner that Defendants gave false testimony, altered documents, concealed income, and hid funds. (*Id.* ¶¶ 15, 17, 18, 19.) Unfortunately, these allegations fail to aid the Court in making a determination as to whether the predicate acts extended over a substantial period of time.[4] *See Howard v. Am. Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000) ("Activity that lasts only a few months is not sufficiently continuous."). Thus, Plaintiff has not alleged a closed-ended continuity under RICO.

Under the lens of open-ended continuity, Plaintiff lacks factual assertions that sufficiently allege that the "predicates are a regular way of conducting defendant's ongoing legitimate business" or that the Defendants are "conducting or participating in an ongoing and legitimate RICO enterprise." *H.J. Inc.*, 492 U.S. at 243. In other words, Plaintiff's FAC does not contend that Defendants' routine business is to file fraudulent bankruptcy cases or that Roger is likely to file a second bankruptcy case to continue to participate in the enterprise of defrauding his creditors, including Plaintiff. Accordingly, the complaint fails to adequately plead that Defendants engaged in an open-ended pattern of racketeering activity. *See Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995) ("Open-ended continuity is shown by past conduct that by its nature projects into the future with a threat of repetition.") (citation and internal quotation marks omitted).

Compare the present matter with *Sun Savings and Loan Ass'n v. Dierdorff*, 825 F.2d

---

[4] Moreover, whereas here, the racketeering activity alleged is fraud, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to the predicate acts. *See Moore v. Kayport Package Express Inc.*, 885 F.2d 531, 541 (9th Cir. 1989). Specifically, in the RICO context, a plaintiff must "detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (citation omitted). Under this standard, Plaintiff's RICO claims are also insufficiently pled.

187, 189–90 (9th Cir. 1987), where a bank sued its former president under RICO for receiving kickbacks from the bank's customers. Ultimately, the Ninth Circuit Court of Appeals held that the alleged predicate acts "did pose a threat of continuing activity because [the defendants] covered up a whole series of alleged kickbacks and receipts of favors, [which] occurred over several months, and in no way completed the criminal scheme." *Id*. at 194. Presently, the criminal scheme according to Plaintiff was to defraud the bankruptcy court. Thus, the only logical inference based off of the pleadings is that as those proceedings have now ended, there is no threat of continued criminal activity. Consequently, Plaintiff's RICO claim cannot withstand Defendants' motion to dismiss. *See Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 450–51 (9th Cir. 1991) (holding that the defendants' actions of forging tax liens occurring over a thirteen month period was a continued criminal activity as there was nothing to suggest that the defendants would not continue to forge documents and the frequency of the forgeries indicated that forging had become a regular way of doing business); *see also Allwaste*, 65 F.3d at 1529 (finding open ended continuity as there was nothing to suggest the defendants would cease extorting kickbacks and that the kickbacks had become a part of the defendants' regular way of doing business).

Furthermore, Plaintiff's claims that she was "damaged," that she has suffered "compensable injury proximately caused," and that her business and property continues to be injured are allegations that fail to rise to the heightened pleading standard of Federal Rule of Civil Procedure 9. (Doc. No. 16 ¶¶ 25, 71, 78, 90 (*see Chaset v. Fleer/Skybox Int'l., LP*, 300 F.3d 1083, 1086–87 (9th Cir. 2002) ("To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest.")). As currently pled, the majority of Plaintiff's claims for damages under RICO are simply barebones legal conclusions without any factual specificity.

On a final note, the Court highlights that Plaintiff's opposition brief repeatedly points the Court to a Connecticut case to argue that her RICO claim is sufficiently pled—*Cadle*

*Co. v. Flanagan*, 271 F. Supp. 2d 379 (D. Conn. 2003). (Doc. No. 29 at 5, 6, 7, 8.) However, in all aspects, the Court finds *Cadle* not only not dispositive, but also inapposite to the present matter.

In *Cadle*, the plaintiff alleged that the defendant fraudulently concealed assets in order to safeguard those assets from creditors. *Id*. at 382–83. The defendant completed this scheme through mail fraud, wire fraud, and bankruptcy fraud. *Id*. at 388. The plaintiff then filed a lawsuit claiming violations of RICO. *Id*. at 383. Taking the allegations as true, the court found that the plaintiff had adequately pled both open-ended and closed-ended continuity. *Id*. at 388. Specifically, the court highlighted that the plaintiff's second amended complaint contended that the predicate acts supporting the scheme took place over several years, but within a ten-year period. *Id*. at 389. Moreover, the plaintiff asserted that the "continuing custodianship" of Flanagan's assets involved a "distinct threat of repetition" since the enterprise was "dedicated to hiding and shielding and continuing the custodianship over Flanagan's assets." *Id*. As currently pled, though both *Cadle* and the instant matter revolve around a defendant who is alleged to have fraudulently concealed assets, the FAC in the instant case does not allege a scheme that happened over several years or that Defendants' enterprise is "dedicated" to hiding assets and thus the scheme continues.

Accordingly, even construing the FAC's allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff RICO claims are not sufficiently pled and are thus **DISMISSED**.

### C. Plaintiff's Allegations of Fraud are not Pled with Enough Specificity so as to Satisfy Federal Rule of Civil Procedure 9's Heightened Pleading Standard

Defendants contend that Plaintiff has not pled her fraud claims with particularity in three different areas: (1) intention to defraud, (2) justifiable reliance, and (3) damages. (Doc. No. 24 at 7–8.) Plaintiff opposes each of Defendants' arguments. (Doc. No. 30 at 11–13.)

Rule 9(b) requires the plaintiff to plead "the 'who, what, when, where, and how' that

10

17-cv-1623-AJB-JLB

would suggest fraud[.]" *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (citation omitted). The plaintiff "must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003). (citation omitted).

### 1. Fraud

The elements of fraud are: (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud or to induce reliance, (4) justifiable reliance, and (5) damages. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Courts in California "have always required plaintiffs in actions for deceit to plead and prove the common law element of actual reliance." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993). Actual reliance "occurs when a misrepresentation is an immediate cause of [a plaintiff's] conduct, which alters his legal relations, and when, absent such representation, he would not, in all reasonable probability, have entered into the contract or other transaction." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997) (citation and internal quotations omitted).

Unfortunately, the shortcomings of Plaintiff's fraud claims are twofold. First, as Plaintiff herself alleges, she was not listed as a creditor in Roger's bankruptcy case. (Doc. No. 16 ¶ 2.) Thus, it is unreasonable to believe that Defendants had the requisite intent to defraud Plaintiff as a creditor, when Roger's bankruptcy case did not list her or even provide her formal notice of the case. *See United States v. Peters*, 962 F.2d 1410, 1414 (9th Cir. 1992) (establishing that the intent to defraud may be inferred from a defendant's statements and conduct).

Second, Plaintiff's claims of justifiable reliance are similarly inconsistent. Plaintiff asserts that she depended on Melissa's representations that Sour Wine Farms had lent Roger $12,692.00 in April of 2015 and that Melissa had lent him $63,054.00 in September of 2013 when evaluating his financial status. (Doc. No. 16 ¶¶ 109, 110, 115.) Additionally, Plaintiff alleges that she relied on Roger's various misrepresentations that he had borrowed money from his wife, Sour Wine Farms, and his statements about his interest in the 14130

11

Bahama Cove property. (*Id*. ¶¶ 101, 102.) Unfortunately, these assertions are at odds with Plaintiff's own statement that she filed an adversary proceeding in the bankruptcy case. (*Id*. ¶ 4.) Thus, it is curious as to how Plaintiff could have rationally relied on Defendants' alleged misrepresentations when she challenged the bankruptcy case as an unlisted creditor. *See Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1332 (1986) ("[A] plaintiff must also show 'justifiable' reliance, i.e., circumstances were such to make it *reasonable* for [the] plaintiff to accept [the] defendant's statements without an independent inquiry or investigation.").

Consequently, Plaintiff's claims sounding in fraud are not adequately pled and are thus **DISMISSED**.

### 2. Fraudulent Conveyance[5]

Plaintiff alleges a cause of action under California Civil Code § 3439.04. (Doc. No. 16 at 18.) In pertinent part, § 3439.04 states that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer . . . as follows: (1) With actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1). In determining actual intent, the Court may consider factors such as (1) "[w]hether the debtor retained possession or control of the property transferred after the transfer"; (2) "[w]hether the transfer or obligation was disclosed or concealed"; or (3) "[w]hether the debtor removed or concealed assets." *Id*. §§ 3439.04(B)(2), (3), (7). "No single factor necessarily is determinative, and no minimum or maximum number of factors dictates a particular outcome." *In re Ezra*, 537 B.R. 924, 931 (B.A.P. 9th Cir. 2015).

Plaintiff alleges that Roger downloaded a "Post-Nup" document from a website and then executed the Post-Nup with Melissa so as to supposedly transfer all of Roger's interest in their community property to Melissa, including the Bahama Cove property. (Doc. No.

---

[5] The Court notes that Defendants' motions do not make any clear arguments seeking to dismiss this cause of action. (Doc. Nos. 18, 24.) Instead, Defendants' motions only argue that Plaintiff's allegations of fraud are not pled with particularity. (Doc. No. 24 at 6.)

12

16 ¶¶ 112, 113.) This transfer was purportedly meant to hinder, delay, and defraud the creditors of Roger. (*Id.* ¶ 115.) Plaintiff then goes on to list the various factors courts consider in deciding whether there was actual intent to defraud. For instance, Plaintiff alleges that the transfer was made without receiving a reasonably equivalent value in exchange for the transfer, that Melissa is an insider, that Roger remains in actual possession of the property, and at the time Roger made the transfers, he was insolvent. (*Id.* ¶¶ 116, 118, 119, 122.)

Having canvassed Plaintiff's various allegations, she has alleged sufficient facts to afford Defendants Melissa and Roger notice of the purportedly fraudulent conduct that forms the basis of her fraudulent transfer claims. *See Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995) ("The purpose of this rule [i.e., Rule 9(b)] is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations."). Here, Plaintiff's FAC states with particularity the property that was supposedly transferred, how it was fraudulently transferred, as well as lists off the factors that go to proving actual intent. Thus, Defendants' motion to dismiss Plaintiff's fraudulent conveyance claims is **DENIED**. *See Hyosung (Am.), Inc. v. Hantle USA, Inc.*, No. C 10-02160 SBA, 2011 WL 835781, at * 4–5 (N.D. Cal. Mar. 4, 2011) (finding the plaintiff's fraudulent transfer cause of action sufficiently pled as the plaintiff had adequately identified the conduct and the property that was the subject matter of the claim).

### D. Defendants' Motions for Sanctions are Procedurally Defective

At the end of Defendants' motions to dismiss, they all request Rule 11 sanctions against Plaintiff and her attorney, Mr. Julian McMillian for filing a purportedly "spurious" RICO claim in this case. (Doc. No. 24 at 12–13.) Unfortunately, Defendants evade Rule 11's clear procedural requirements. Specifically, Rule 11 states that a "motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. Proc. 11(c)(2). Furthermore, Rule 11 provides for a safe harbor provision, which requires parties to give the opposing party 21 days first

to "withdraw or otherwise correct" the offending paper—this safe harbor provision is strictly enforced. *See Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005); *see also Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 788 (9th Cir. 2001) ("Rule 11(c)(1)(A) provides strict procedural requirements for parties to follow when they move for sanctions under Rule 11.") (citation omitted). As Defendants have completely failed to follow the clear procedures set forth by Rule 11, the Court will not entertain Defendants' motion for sanctions in this form. Thus, their motion for sanctions is **DENIED**.

## CONCLUSION

In conclusion, Defendants' motions to dismiss are **GRANTED IN PART AND DENIED IN PART**. As this is only Plaintiff's first amended complaint, the Court will **GRANT** Plaintiff leave to amend. Plaintiff must file a second amended complaint within **fourteen (14) days** from the date of this Order. Failure to file an amended complaint will result in the dismissal of this case. Additionally, Defendants' motion for sanctions is **DENIED WITHOUT PREJUDICE** so that they may bring this motion at a later date. However, Defendants are cautioned that they are to review Federal Rule of Civil Procedure 11 before filing another motion for sanctions if they wish to do so.

**IT IS SO ORDERED**.

Dated: February 27, 2018

Hon. Anthony J. Battaglia
United States District Judge